MINNIE FIRESTEIN, APPELLANT, V. MOSES HORWICH ET AL., APPELLEES.

FILED JANUARY 5, 1895.   NO. 5206.

Conveyances: CANCELLATION: FRAUD: EVIDENCE: EQUITY: REVIEW. This case involves no disputed question of law. The evidence examined, and *held* to support the finding of the district court, that the conveyances made by the appellant to the appellees in this case were not procured from the former by fraud, duress, or undue influence, and the decree affirmed.

APPEAL from the district court of Dodge county. Heard below before POST, J.

*Frick & Dolczal,* for appellant.

*Kennedy & Learned, contra.*

RAGAN, C.

Minnie Firestein brought this suit in equity in the district court of Dodge county against Moses Horwich, K. Horwich, Nathan Ginsberg, and L. Ginsberg. Mrs. Fire-

stein alleged in her petition, in substance, that in January, 1891, she was the owner of certain real estate situate in the city of Fremont, together with a stock of merchandise, some household goods, and other personal property; that her husband, Pinkus Firestein, as her agent, was in the management of her mercantile business; that she and her husband were illiterate, unable to read or write the English language, and could but imperfectly speak or understand it; that the defendants well knew all these facts; that the defendants, or some of them, had been on terms of intimacy with Mrs. Firestein and her husband for a number of years, and that she and her husband had been accustomed to look to the defendants, or some of them, for advice and counsel in the conduct of their affairs; that without the knowledge of Mrs. Firestein, her husband, in January, 1891, purchased of a peddler some goods, which, in a day or two afterwards, it was discovered had been stolen from another store in Fremont; that she and her husband became alarmed for fear that they should be accused of the larceny of these goods, or of having purchased them, knowing them to be stolen, and communicated with the defendants, or some of them, who lived in Omaha, and the defendants came to the residence of Mrs. Firestein in Fremont, and she and her husband there counseled with the defendants for advice as to what they should do with reference to the stolen property which the husband had bought; that the defendants knew that the property purchased by the husband of Mrs. Firestein was stolen property, and had conspired together to have the husband of Mrs. Firestein purchase it, and thus lead the plaintiff and her husband into trouble; that the defendants, conspiring to cheat and defraud Mrs. Firestein of her property, advised her that she and her husband were likely to be prosecuted for the offense of buying knowingly stolen property, and sent to the penitentiary; advised herself and husband to convey and transfer to the defendants,

or some of them, all the property owned by Mrs. Firestein in trust for her use, and advised her to at once leave the country and remain away until such time as they could safely return; that by the representations of the defendants she was put in great fear and believed that she and her husband would be sent to the penitentiary if they remained in the country, and, relying upon the counsel given her by the defendants, she and her husband executed deeds of conveyance and bills of sale for all the property in controversy to the defendants, or some of them, in trust for herself, as she then believed; that the defendants then furnished her $500 in money and advised herself and husband to go to Toronto, Canada, which they did, promising to send to them there their household goods, which they did not do; that the defendants at the same time executed and delivered their notes for $1,500 to Mrs. Firestein for the purpose of enabling her to raise further sums of money that she might need; that the agreement between Mrs. Firestein and her husband and the defendants was that the conveyances and bills of sale should be made to the defendants, or some of them, in trust for the use of Mrs. Firestein, and that when she might return to the country safely, and did return, that the defendants would reconvey and restore the said property to Mrs. Firestein; that the defendants, in pursuance of their conspiracy to cheat and defraud Mrs. Firestein, caused absolute deeds of said property to be made up and duly executed by the plaintiff and her husband, and caused absolute bills of sale of the personal property to be made to the defendants and executed by Mrs. Firestein; that at the time she executed these deeds and bills of sale she supposed and believed that they contained the agreement made between her and the defendants that the latter would hold the property in trust for her use; that soon after the execution of said deeds and bills of sale the defendants took possession of all said property and converted the personal property to their

own use. The prayer was for a decree compelling the defendants to restore the personal property converted to their own use, or account for its value in money, and that the defendants be decreed to hold said property in trust for Mrs. Firestein and reconvey the same to her. The answer of the defendants, so far as material here, was a general traverse of the allegations of the petition, and an affirmative defense that the conveyances made to them by Mrs. Firestein were made in pursuance of an actual purchase of the property. The district court found the issues in favor of the defendants and dismissed the action of Mrs. Firestein, and she has appealed.

The able and industrious counsel for the appellant admits in his argument here that the evidence on behalf of his client is not sufficient to establish that these conveyances made by her were made on account of duress, and that the evidence as to direct fraud was conflicting; but he argues that the decree should be reversed because the evidence shows that the conveyances were procured from the appellant by a "species of artful and inequitable conduct, and insidious constraint, which amount to undue influence." Doubtless the district court would have been justified in finding from the evidence that these conveyances made by the appellant were procured from her by an undue influence exerted over her by the defendants; but the district court has not so found, and we are unable to say that its finding that the conveyances were not procured from the appellant by an undue influence exerted over her by the defendants is unsupported by the evidence. The evidence given on the trial in behalf of the appellant tended to support her theory of the case. The evidence offered on behalf of the defendants tended to support their theory of the case. It was largely a question of veracity between the appellant and her husband and the defendants. The district court came to the conclusion that the evidence offered and given by the appellant did not establish appel-

lant's contention that these conveyances were obtained from her by fraud, duress, or even undue influence. We do not know how much of the evidence given by the parties to this suit as to the conversation and transactions between them, out of which this controversy arose, was believed by the learned judge who tried this case. For our part we do not believe that any of the parties told the truth, the whole truth, and nothing but the truth. There is no disputed question of law in this case. The issues involved are issues of fact, and these issues once established, the law of the case is too plain for argument. The decree of the district court must be and is

AFFIRMED.

POST, J., not sitting.